UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| CHARLES COWING, | CIVIL ACTION NO. 5:15-129-KKC |
| Plaintiff, | |
| V. | OPINION & ORDER |
| LOCKHEED MARTIN CORPORATION, | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on defendant Lockheed Martin Corporation's motion for summary judgment. (DE 22). Lockheed Martin seeks a finding of no liability on each of plaintiff Charles Cowing's claims of disability discrimination. For the following reasons, Lockheed Martin's motion is **GRANTED** in part and **DENIED** in part.

## I.  Background

Cowing began working as a structural aircraft mechanic for Lockheed Martin, a Maryland corporation, in April 2012 at its facility in Fayette County, Kentucky.

Cowing worked as part of a team that enhanced and modified aircraft, primarily helicopters, for the military. This job required Cowing to be able to perform more than 400 procedures or modifications for the aircraft on which he worked. At first, he was given smaller jobs to execute—for instance, putting brackets in the aircraft so electricians could put all their boxes or radios into the aircraft. Then, as he earned the trust of his coworkers and gained experience, he was assigned more complicated tasks.

Before his employ at Lockheed Martin, Cowing served in the United States Army, where he was worked as an aircraft mechanic. While serving in the military, Cowing suffered

1

injuries to his right knee and lower back. These injuries were so severe that Cowing received a medical discharge from the military.

Cowing's job as a structural mechanic aggravated his back and knee problems, and on August 12, 2013, Cowing fell at Lockheed Martin while performing a job in the cabin of a Blackhawk helicopter. On that day, Cowing had been working in confined space for thirty or forty-five minutes and stood up to take a break and to crawl out of the aircraft. As he got outside the helicopter, his "left leg was just toast, [he] couldn't feel it, and it kind of gave out and [he] kind of fell." (DE 24, Cowing Dep. at 8, internal page numbering at 29). Cowing reported the incident to Rob Gates, a supervisor who was nearby. Cowing then discussed the incident with Justin Miculinich, a manager, before leaving for the emergency room as he had been advised to do.

The emergency room doctor directed Cowing that he was not to return to work until he was seen by his specialists. On this advice, Cowing saw his treating neurosurgeon, Dr. Steven Kiefer, twice in August 2013. Dr. Kiefer released Cowing back to work at Lockheed Martin on August 30, 2013, with no physical restrictions.

Before Cowing left for the emergency room on the day of his accident, Miculinich informed him that he should have his doctor prepare him a profile, or list of medical restrictions. Cowing testified that he viewed the profile as a way to protect himself from doing jobs that aggravated his condition. (DE 24, Cowing Dep. at 22, internal page number at 88). Cowing went to Dr. Luis Vascello, his pain management doctor, to have a profile prepared.

At the beginning of September 2013, Dr. Vascello, in consultation with Cowing's physical therapist, developed the following restrictions for Cowing:

- Not to lift, push, or pull more than 20 pounds with both upper extremities;
- Not to bend, stoop, or perform twisting motions more than 20 minutes per hour, without using torqueing activities;
- Rotate tasks using different muscle/tendon groups;

2

- Pause for stretching 5 minutes per hour;
- Stand or walk to tolerance;
- Alternate from sitting to standing working positions;
- Perform work in kneeling or squatting positions up to 10 minutes per hour;
- Not to lift more than 20 pounds from floor level up to 10 minutes per hour;
- Not to lift more than 15 pounds above shoulder level up to 10 minutes per hour;
- No long lever arm lifting with trunk rotation and flexion;
- Limit positions causing bending and twisting of the lower spine.

(DE 30, Vascello Dep. at 37). These restrictions were considered permanent.

Cowing testified in his deposition that, based on his doctor's advice, he did not intend or desire to return to work in his old position. (DE 24, Cowing Dep. 26, internal page numbering at 103). He also told various employees at Lockheed Martin that he wanted to return to school and that he needed to find another discipline because his job was aggravating his condition.

However, Miculinich testified that Cowing wanted to return to work because he was receiving less pay when he was on short-term disability. (DE 23, Miculinich Dep. at 64–65). Cowing also averred in his reply to his state court motion to amend his complaint that he returned to work at Lockheed Martin expecting to be reassigned to a different job, but he was still capable of performing his old job. (DE 1-1, Reply filed in state court record, at 47).

Around the time he returned to work, Cowing had several conversations with supervisors Gates and Tim Dykes about the possibility of being transferred to "fab shop" upon his return to Lockheed Martin. The fab shop, or fabrication shop, is where components for the aircraft are built. (DE 29, Barnett Dep. at 29).

Cowing testified that Gates had brought up the possibility of the fab shop after he had told Gates that his doctor thought it would be best if he were moved to a different position. Cowing stated in his deposition that Gates told him that he could get into the fab shop and that such transfers had been done before. (DE 24, Cowing Dep. at 24, internal page numbering at 94).

3

On September 9, 2013, Cowing reported to Lockheed Martin, where he was first examined by an occupational nurse, who released him to go into his work area. After he had badged into the hangar, he was met by Andy Commare, a production supervisor, who asked him, "What the fuck are you doing here?" When Cowing told Commare that he was returning back to work, Commare said, "No, you're not. You're a liability. You cannot be here. . . . Don't move. Don't touch anything. I'll be right back." (DE 24, Cowing Dep. at 8, internal page numbering at 29).

Cowing was then directed to sit in an office, where he was told that Lockheed Martin would not accommodate his restrictions and that Lockheed Martin would be placing him on short-term disability. (DE 24, Cowing Dep. at 30, internal page numbering at 118).

That same day, Miculinich informed Lockheed Martin human resources employee Brittany Strietzel that Cowing's restrictions could not be accommodated. Lockheed Martin represents that Strietzel then undertook to schedule a meeting of its accommodations committee and sent the following email to Miculinich, among others:

> Attached is what I need completed ASAP so we can hold an accommodations meeting to discuss why we cannot accommodate him. An accommodations meeting will make the denial of the medical restrictions more formal.

(DE 34, Strietzel Dep. at 58). Miculinich then completed an essential functions form for the position of structural mechanic and sent it back to Strietzel stating that it "should be a good 'standard'" for the position Cowing held. (DE 34, Strietzel Dep. at 58).

Strietzel also completed a "Work-Related Modification Request" for Cowing, which listed his medical restrictions and stated that he wanted to "[r]eturn to work at some capacity, such as in an administrative role." (DE 34, Strietzel Dep. at 54). The Lockheed Martin Accommodations Committee met on September 11, 2013, regarding Cowing and his return to work and found that no administrative positions were available for him and that it was unable to accommodate his requests. (DE 34, Strietzel Dep. at 51).

4

After not being able to return to work at Lockheed Martin, Cowing decided to attend college and study healthcare administration. He received his degree in May 2016.

Cowing initially brought this case in Fayette Circuit Court, Fayette County, Kentucky, against Lockheed Martin and production supervisor Commare. In his amended complaint, Cowing asserted two disability discrimination claims based on state law against Lockheed Martin: workplace exclusion and failure to accommodate. Cowing pleaded one claim against Commare for aiding and abetting discrimination in violation of Kentucky law.

After the state court granted Commare's motion for summary judgment, Lockheed Martin properly removed Cowing's case against it to federal court on the basis of diversity jurisdiction. (DE 1). Cowing's subsequent motion to remand was denied. (DE 7).

Lockheed Martin has now moved for summary judgment. In its motion, Lockheed Martin seeks a finding of no liability on each of Cowing's claims. In the alternative, Lockheed Martin seeks an order from the Court limiting the amount of damages that Cowing could be awarded at trial.

## II. Analysis

### a.  Standard of review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Moreover, entry of summary judgment is appropriate, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

When, as here, a defendant moves for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"Credibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment; rather, the evidence should be viewed in the light most favorable to the non-moving party." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 255). Based on this standard, "any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).

### b. Cowing's claims

In this case, Cowing asserts two disability discrimination claims against Lockheed Martin. First, Cowing argues that Lockheed Martin wrongfully excluded him from the workplace based on a disability, and second, that Lockheed Martin failed to allow or provide a reasonable accommodation for his disability. (See DE 35, Response at 2) (discussing plaintiff's pleadings in amended complaint).

Cowing brings his claims under the Kentucky Civil Rights Act. *See* KRS 344.010 *et seq.* One of the purposes of that act is "[t]o safeguard all individuals within the state from discrimination . . . because of the person's status as a qualified individual with a disability" as defined by state law. KRS 344.020(1)(b). The term "qualified individual with a disability" means:

> an individual with a disability as defined [by Kentucky law] who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's disability without undue hardship on the conduct of the employers' business.

KRS 344.030(1).

Kentucky's law was modeled after federal law, and Kentucky courts have interpreted the state law consistently with federal law. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003). However, Congress amended the Americans with Disabilities Act in 2008, and "Kentucky courts have not yet addressed how the amendments to the ADA affect a KCRA disability discrimination analysis, nor has the Kentucky legislature amended the KCRA as Congress did to broaden the scope of what is meant by disability." *Dickerson v. City of Georgetown, Ky.,* No. 5:14-cv-39-JMH, 2015 WL 2401190, at *3 n.2 (E.D. Ky. May 20, 2015). Thus, this Court will review Cowing's claims "based on the analysis still used by Kentucky courts, which use the approach taken by federal courts *before* the amendments took effect." *Id.* (emphasis in original); *see also* KRS 344.020(1)(a) ("The general purposes of this chapter are . . . [t]o provide for the execution within the state of the policies embodied in . . . the Americans with Disabilities Act of 1990 . . . .").

Under Kentucky law, a plaintiff may attempt to establish unlawful discrimination by introducing direct or indirect evidence of discrimination. *See Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 101 (Ky. Ct. App. 2000) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996), *abrogated by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012)). Cowing proceeds under the first method.

In a case where a plaintiff has direct evidence that the employer relied on his disability in making an adverse employment decision, the Court will use a burden-shifting analysis. *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014) (quoting *Monette*, 90 F.3d at 1186).

First, the plaintiff bears the burden of proving he is disabled, as defined by Kentucky law. *Noel*, 53 S.W.3d at 101. Then, the plaintiff bears the burden of establishing that he is "otherwise qualified" for the position despite his disability. *Id*. A plaintiff can prove he is otherwise qualified for a position in one of three ways: first, that he is otherwise qualified

7

without an accommodation from the employer; second, that he is otherwise qualified with an alleged "essential" job requirement eliminated; or third, that he is otherwise qualified with a proposed reasonable accommodation. *Id.* Then the burden shifts.

After the plaintiff meets his burden on the first two elements, the employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship on the employer. *Id.* Each of these elements will be addressed in turn.

As a preliminary matter, the Court observes that the Americans with Disabilities Act, which the Kentucky Civil Rights Act is modeled after, requires an "individualized inquiry" in determining whether a plaintiff's disability or other condition disqualifies him from a particular position. *Keith v. Cty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). This will involve a consideration of the plaintiff's personal characteristics, his actual medical condition, and the effect, if any, that his condition may have on his ability to perform the job in question. *Id.*

Cowing argues that an individualized inquiry did not occur in his case. To support his argument, he points to evidence, including: that Miculinich determined within twenty minutes of encountering Cowing on September 9, 2013, that Lockheed Martin would not allow Cowing to return to work; that this decision was based on the notion that lifting an item weighing less than his weight restrictions could be like lifting more than his weight restrictions; that no one consulted with Cowing as to how the restrictions would impact him doing his job as a structural aircraft mechanic; that the essential functions form supposedly applicable to Cowing was prepared only after Miculinich had reported to Strietzel that Lockheed Martin would not accommodate Cowing; and that the accommodations meeting was held merely to affirm the decision that had already been made. Cowing also points to Strietzel's email to Miculinich and others—which said she needed an essential functions form

8

completed as soon as possible so an accommodations meeting could be held to discuss why Lockheed Martin could not accommodate Cowing—as evidencing a lack of a good-faith inquiry and individualized assessment.

Lockheed Martin argues that it acted in good faith and under the belief that Cowing could not safely perform his job as a structural mechanic. Lockheed Martin further argues that it held a meeting of its accommodations committee to consider Cowing's situation.

Here, the facts supplied by Cowing, which the Court must accept as true, do not demonstrate to the Court a considered and individualized approach in determining whether Cowing's medical restrictions would affect his ability to return to his previous position.

Now, the Court will work its way through Cowing's disability discrimination claims.

### i.   Kentucky Civil Rights Act definition of "disability"

Kentucky's statute defines disability, with respect to an individual, as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. KRS 344.010(4). Cowing argues the first definition of disability.

Under this definition, merely having a physical impairment does not mean that an individual is disabled. *Schave*, 127 S.W.3d at 592 (citing *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 195 (2002), *overturned by* U.S. Pub. L. 110-325 (2009)). Instead, an individual must also demonstrate "that the impairment limits a major life activity" and that the limitation on the major life activity is "substantial." *Id.*

In *Williams*, the United States Supreme Court defined "major life activities" as being those "that are of central importance to daily life." *Williams*, 534 U.S. at 197. Kentucky courts have found these activities to include, among others, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working. *Schave*, 127 S.W.3d at 592.

9

In reviewing a disability discrimination claim, the determination of whether an individual has an impairment and whether the conduct affected by the impairment is a major life activity under the statute are legal questions. *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 707 (Ky. Ct. App. 2004). However, "[t]he ultimate determination of whether the impairment substantially limits the major life activity generally is a factual issue for the jury, but it may be resolved upon summary judgment under the appropriate circumstances." *Id.*

In this case, the parties do not dispute that Cowing suffers from a physical impairment, as Lockheed Martin does not contest that Cowing has chronic back and knee pain.

Instead, Lockheed Martin argues that, although Cowing has a physical impairment, he can only show "that his back problems prevented him from performing the essential and everyday functions of his job as a structural mechanic." (DE 22-1, Motion at 22). Simply stated, Lockheed Martin argues that Cowing is not disabled under the statute because he has failed to present evidence that his impairment is so severe. (DE 22-1, Motion at 22). For instance, Lockheed Martin points to evidence in the record that Cowing can run up to or more than two miles and can play golf. (DE 22-1, Motion at 22; DE 22-23, Physical Therapy Progress Notes).

Cowing, on the other hand, argues that the evidence shows he suffers from a disability. He represents that the permanent restrictions imposed by Dr. Vascello "regard and recognize that Cowing's back problems had left him substantially limited with regard to the major life activities of walking, standing, reaching, lifting, and bending, as compared to most people in the general population." (DE 35, Response at 26).

As stated above, determining whether an individual has an impairment and whether the activities affected by that impairment are major life activities are legal questions. Here, the

Court finds, and the parties do not debate, that Cowing suffers from a physical impairment based on his back and knee pain.

Thus, the legal question for the Court becomes whether the activities affected by Cowing's impairment are major life activities. Here, the record contains evidence that his impairment implicates certain major life activities, including walking, standing, reaching, lifting, and bending. For example, Dr. Kiefer, Cowing's neurologist, testified that he saw Cowing on August 14, 2013, two days after Cowing fell at work, and Dr. Kiefer noted that Cowing's symptoms had been somewhat manageable with medicines and periodic pain management until the previous week when he was carrying a bottle of water at home and stepped off a step and jarred his back. (DE 31, Kiefer Dep. at 31).

Though an "impairment that interferes with work related tasks . . . does not necessarily rise to the level of a disability under the [law]," Cowing's restrictions implicate major life activities, including lifting and walking, for Cowing outside of his role as a structural mechanic at Lockheed Martin. *See Schave,* 127 S.W.3d at 593–94 (quoting *Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002)).

Thus, the Court is left with the factual question of whether Cowing's impairments "substantially limit" any of his major life activities. The Court may grant summary judgment on this question in certain instances, but this case is not one of them. When, as here, the record contains conflicting evidence as to whether the plaintiff is "substantially limited" in one or more major life activities—for instance, Cowing being able to run and play golf versus him not being able to lift items at home—the question of whether a plaintiff's physical impairment substantially limits one or more of his major life activities is best left for the jury.

Because a genuine issue of material fact remains as to whether Cowing was "substantially limited" in one or more major life activities because of his physical impairment, summary

judgment cannot be granted to Lockheed Martin on this basis. Thus, the Court must continue its analysis of the other elements in a disability discrimination claim.

### ii.    "Otherwise qualified"

The Court will now address the second element of a disability discrimination claim that Cowing must prove: demonstrating that he was "otherwise qualified" for the position despite his disability. *See Noel*, 53 S.W.3d at 101 (citing *Monette*, 90 F.3d at 1178).

To meet his burden on this element, Cowing must show that he is "otherwise qualified" for the position despite his disability:

(a) without accommodation from the employer;

(b) with an alleged "essential" job requirement eliminated; or

(c) with a proposed reasonable accommodation.

*Id.*

### A.  No accommodation

First, Cowing can attempt to show that he was "otherwise qualified" for the position of structural mechanic by providing evidence to demonstrate that he could perform the job's essential functions without an accommodation from Lockheed Martin. This is Cowing's workplace exclusion claim.

Under Kentucky law, "[c]onsideration shall be given to the employer's judgment as to what functions of a job are essential . . . ." KRS 344.030(1). Further, "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* However, deciding "[w]hether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Keith*, 703 F.3d at 926.

12

The Court looks to federal law for guidance in defining "essential functions." Under federal regulations, essential functions are defined as those that are the fundamental job duties of the employment position that an individual holds or desires. *Rorrer*, 743 F.3d at 1039 (quoting 29 C.F.R. § 1630.2(n)(1)). Essential functions do not include marginal functions of the position. *Id.*

Kentucky law directs the Court to first consider Lockheed Martin's judgment as to what are the essential functions of the job of structural mechanic. But consideration is not the same as deference. *See Rorrer*, 743 F.3d at 1042 ("The ADA states that the court should give 'consideration' to the employer's determination, not 'deference,' with the latter incorrectly implying that the employer's position creates a strong presumption in its favor.").

The parties argue over the significance of three essential job function forms that have been placed into evidence: one prepared by Gates for Cowing to take to Dr. Vascello to complete Cowing's medical restrictions profile; one prepared by Miculinich after Cowing told Lockheed Martin of his medical restrictions; and one prepared for David King, another structural mechanic who had a prosthetic leg and who had requested certain accommodations.

Before the Court, Lockheed Martin argues that the essential functions form created by Miculinich is the accurate representation of what a structural mechanic position entails. In arguing that the form created by Miculinich is correct, Lockheed Martin explicitly discredits the accuracy of the essential functions as listed on the form Gates, its own employee and supervisor of structural mechanics, created for Cowing.

Specifically, Lockheed Martin points to Cowing's weight restrictions as demonstrating that he would not be able to perform that certain essential functions no matter which form was used. For instance, the form created by Miculinich required that Cowing be able to lift, carry, push, or pull up to fifty pounds on a continual basis, i.e. hourly or daily. The form

created by Gates, on the other hand, required that Cowing be able to lift, carry, push, or pull up to twenty-five pounds frequently, i.e. weekly or biweekly, and be able to move twenty-five to fifty pounds infrequently, i.e. monthly or less.

The Court finds that a genuine issue of material fact exists as to what are the essential functions of the position of a structural mechanic, but this genuine issue of material fact is not created by the difference in forms. Instead, what creates such an issue is the lack of evidence in the record demonstrating the procedure by which Lockheed Martin creates and uses an essential functions form. The dispute between Cowing and Lockheed Martin as to whether any of the forms depict an accurate representation of the position of a structural mechanic further supports the Court's finding that a genuine issue of material fact exists.

Lockheed Martin argues that an essential functions form had to be created by the employee's immediate manager, who in Cowing's case would be Miculinich. Cowing, on the other hand, points to testimony of Karen Sims, Lockheed Martin's Equal Employment Opportunity representative and the individual who was responsible for administering its reasonable accommodation process, where Sims said that essential functions forms are typically completed by either the employee's supervisor or manager. (DE 35, Response at 6). Cowing argues that this testimony demonstrates it was not improper for Gates to create the essential functions form for Cowing to give to Dr. Vascello.

The evidence in the record demonstrates that the job of a structural mechanic was demanding and vigorous work. While modifying and enhancing aircraft for airworthiness, structural mechanics would have to move in many physical positions, including crawling under, through, and over various parts of the aircraft. Additionally, structural mechanics were required to be able to perform more than 400 different modifications or procedures upon an aircraft.

With so many moving components, both literally and figuratively, the Court cannot say with any certainty what activities or tasks comprise the essential functions of a structural mechanic position. Lockheed Martin argues that all the functions listed on the form created by Miculinich are essential and, further, that Cowing conceded that he could not perform the essential functions of his job based on the restrictions imposed by Dr. Vascello.

However, Cowing disputed in his deposition that his medical restrictions would have interfered with his ability to perform his job functions as a structural mechanic. (DE 24, Cowing Dep. at 23–24, internal page numbering at 90–93). Cowing has also presented evidence from coworkers and supervisors at Lockheed Martin to the effect that the restrictions imposed by his doctor would not have interfered with his ability to perform necessary tasks as a structural mechanic.

At this stage, the Court must accept evidence offered by Cowing as true, and the evidence he has presented creates a sufficient basis to find that a genuine issue of material fact exists as to the essential functions of the job of a structural mechanic.

### B. Alleged "essential" function eliminated

The second means by which Cowing could demonstrate that he is "otherwise qualified" for the position of structural mechanic is to show that the essential functions that Lockheed Martin claims he cannot meet are not the true essential functions of the position.

Any recitation of the arguments on this point would be redundant, as the Court has already found that a genuine issue of material fact exists as to the essential functions of a structural mechanic position. Thus, the Court will proceed to the third means by which Cowing can demonstrate that he was otherwise qualified for the position.

### C. Reasonable accommodation

Finally, Cowing can argue that he is a qualified individual with a disability in that he could have performed the essential functions of the job he held (a structural mechanic

working on aircraft) or a job he desired (a position in the fab shop) with a reasonable accommodation.

As an initial matter, Lockheed Martin argues that Cowing has abandoned his failure to accommodate claim by not raising it in his response to Lockheed Martin's motion for summary judgment. Although the Court recognizes that Cowing's response did not mirror Lockheed Martin's structure of argument, the Court finds that Cowing's recitation of the facts and reference to the claims he pleaded in his complaint permit him to escape an abandonment claim.

Nonetheless, Cowing still bears the initial burden of proposing an accommodation and showing that the accommodation would be objectively reasonable. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (citing *Hedrick W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004)). The Sixth Circuit has described an employee's burden on this issue to require that the proposed accommodation be reasonable because it both efficacious and proportional to costs. *Keith*, 703 F.3d at 927. This inquiry looks to whether an accommodation is reasonable in the "run of cases." *Id.* Further, "[t]he reasonableness of a requested accommodation is generally a question of fact." *Id.*

Moreover, employers must engage in an interactive process with a disabled employee in arriving at potential accommodations. This duty to engage in an interactive process is mandatory and requires communication and good-faith exploration of possible accommodations. *Keith*, 703 F.3d at 929 (quoting *Kleiber*, 485 F.3d at 871). However, failure to engage in the interactive process is only an independent violation of the law if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation. *Rorrer*, 743 F.3d at 1041.

16

### 1. Position Cowing originally held

First, assuming that Cowing's restrictions can be seen as requests for accommodation, Cowing still bears the burden of proposing an accommodation that will permit him to perform the essential functions of his job. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015).

As discussed above, a genuine issue of fact exists as to what are the essential functions of the position of a structural mechanic. Thus, the Court cannot determine whether permitting Cowing to return to work in the position he held would be a reasonable accommodation because a necessary element of the test is unknown—that is, what are the essential functions of a structural mechanic position that Cowing would be required to perform. Further, reasonableness is a question better left for a jury.

However, the Court has concerns as to whether a true interactive process occurred between Lockheed Martin and Cowing to determine whether his restrictions would permit him to return to work. Although the accommodations committee's recommendation indicates that an "interactive dialogue" took place, whereby Cowing stated that he knew he could not perform his current position with the restrictions, the record also demonstrates that Miculinich quickly determined that Cowing's restrictions would not be accommodated, and then an accommodations meeting was held to affirm the decision that Miculinich had already made.

On its face, this does not strike the Court as a thorough attempt by Lockheed Martin to determine whether Cowing's medical restrictions would in fact impede his ability to perform his tasks. This is particularly true in light of evidence in the record that Lockheed Martin had approved of restrictions for another structural mechanic that prohibited the individual from lifting more than ten pounds, from heavy lifting, and from standing for long periods of time. (DE 35-5, Toledo-Acevedo affidavit).

### 2. Position in the fab shop

Next, Cowing argues that being transferred to the fab shop would have been a reasonable accommodation.

Generally, to overcome summary judgment, a plaintiff must identify the specific job he seeks and demonstrate that he is qualified for it. *Rorrer*, 743 F.3d at 1040 (quoting *Kleiber*, 485 F.3d at 870). And "although employers have a duty to locate suitable positions for disabled employees, such employees may not recover unless they propose, or apply for, particular alternative positions for which they are qualified." *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 258 (6th Cir. 2000) (finding district court's grant of summary judgment to defendant was appropriate as the plaintiff "simply did not show that he was qualified to perform the positions that he now identifies in his brief as potential accommodations"). Moreover, "an employer need only reassign the employee to a vacant position." *Id.* (citing case law and federal regulation).

 Here, Cowing has presented evidence that he discussed the possibility of obtaining a position in the fab shop with two supervisors and that he believed the fab shop was falling behind and needed extra help. Yet, nothing in the record demonstrates that Cowing formally requested to be transferred to the fab shop. Instead, Cowing requested "to return to work at some capacity, such as in an administrative role." (DE 34, Strietzel Dep. at 54).

Lockheed Martin has put forth evidence that there was no position in the fab shop at the time Cowing sought to return to work. (DE 22-20, Barnett Affidavit at 1). Lockheed Martin also argues that a position in the fab shop would have been a structural mechanic position that would have had the same essential functions as the job Cowing previously held.

The Court need not reach Lockheed Martin's second argument, though, because Cowing has not put forth any evidence to rebut Lockheed Martin's assertion that there were no

18

openings in the fab shop during the time Cowing would have sought to transfer. This alone is enough for the Court to find that a transfer to the fab shop would not have been a reasonable accommodation for Cowing. As such, Cowing's failure to accommodate claim based on a transfer to the fab shop must fail as a matter of law.

Finally, the evidence demonstrates that Lockheed Martin attempted to accommodate Cowing's request that he be placed in an administrative role, but found that there were currently "no administrative roles open at the facility that Mr. Cowing could apply [for] and there [were] no duties administrative in nature that he could perform in the group he work[ed]." (DE 34, Strietzel Dep. at 50).

Lockheed Martin also undertook to see if there were a commutable facility at which Cowing could work but found that there was not. (DE 34, Strietzel Dep. at 48). Lockheed Martin's Compliance Team weighed in on the scenario: "Given these restrictions, their scope, their permanent nature, and the lack of current job openings for the employee at commutable facilities, we have no additional recommendations to accommodate. We're assuming since he is a represented employee, we have searched all job families allowable per the CBA that may be options and not just the administrative role the employee suggested." (DE 34, Strietzel Dep. at 48).

Thus, in determining whether a position existed for Cowing to be transferred to, it appears that Lockheed Martin did engage in the required interactive process.

### iii.   Employer's arguments

If a plaintiff establishes the first two elements of a disability discrimination claim—that he is disabled and otherwise qualified for the position—the burden shifts to the employer, who will "bear[] the burden of proving that a challenged job criterion is essential . . . or that a proposed accommodation will impose an undue hardship upon the employer." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016) (quoting *Monette*, 90 F.3d at 1186).

19

Genuine issues of material fact prevent the Court from granting complete summary judgment to Lockheed Martin on the first two elements, so a review of the employer's burden is required.

The first method by which Lockheed Martin could uphold its burden is by proving that a challenged job criterion is essential. As discussed above, a genuine issue of material fact prevents the Court from determining the essential functions of the position of a structural mechanic.

The second means by which Lockheed Martin could uphold its burden is by proving that the proposed accommodation would impose an undue hardship on the employer.

Here, an inquiry into whether the employer will suffer an undue hardship from the plaintiff's preferred accommodation looks to the context of the particular employer's operations. *Keith*, 703 F.3d at 927 (internal quotation marks omitted). In an undue hardship determination, an employer may escape liability "if he can carry the burden of proving that the disability accommodation reasonable for a normal employer would break him." *Id.* (quoting *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 543 (7th Cir. 1995)). This is different from the plaintiff's burden to show that an accommodation is reasonable in the run of cases. *Id.*

Further, the law "does not require employers to accommodate individuals by shifting an essential job function onto others." *Hoskins v. Oakland Cty. Sheriff's Dep't*, 227 F.3d 719, 729 (6th Cir. 2000). However, "[s]hifting marginal duties to other employees who can easily perform them is a reasonable accommodation." *Rorrer*, 743 F.3d at 1044.

Here, as to Cowing's restrictions being viewed as a proposed accommodation, Cowing has offered testimony that his medical restrictions would not impact his ability to perform the essential functions of the job. Further, a genuine issue of material fact exists as to what are the essential functions of a structural mechanic position. Thus, summary judgment cannot

be granted to Lockheed Martin on this issue because the record is not sufficiently developed for the Court to determine whether accommodating Cowing's medical restrictions would impose an undue burden on Lockheed Martin.

Second, as to whether reassigning Cowing to the fab shop was a reasonable accommodation, Lockheed Martin was not required to move Cowing into a position that was not vacant. Requiring it to have done so would have imposed an undue burden on Lockheed Martin, and it is entitled to summary judgment on Cowing's failure to accommodate claim based on a transfer to the fab shop on this basis.

### c. Lockheed Martin's request for order limiting damages

The final argument to address is Lockheed Martin's request for an order limiting the damages that Cowing can recover at trial.

First, Lockheed Martin argues that Cowing cannot recover lost wages for the period in which he was enrolled as a full-time college student. Under Kentucky law, "[a] plaintiff in a wrongful termination case is entitled to lost wages only for the periods in which he was ready, willing, and able to work and in which he was physically capable of performing the essential functions of the job he claims was wrongfully denied." *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 917 (Ky. Ct. App. 2006).

In *Upchurch*, the Kentucky Court of Appeals explained that a plaintiff is required to mitigate his damages by exercising reasonable diligence to secure other comparable work. *Id.* at 918. However, although the state appellate court said that the pursuit of an education is not sufficient to meet the duty to mitigate damages, it also stated that such a pursuit does not necessarily preclude an award. *Id.* at 919. Instead, "[t]he issue is not whether the plaintiff returned to school but whether during the time he was enrolled in school, he continued to be ready, willing, and available to accept employment." *Id.* The Kentucky Court of Appeals

further stated that "[t]he duty to mitigate damages will not permit recovery for the wages lost during the period when he made a voluntary choice to be unemployed." *Id.*

Here, Lockheed Martin argues that Cowing voluntarily chose to remove himself from the workforce and that he admitted to having decided when his short-term disability ran out in early 2014 that he had no desire to return to Lockheed Martin. Reviewing his deposition, Cowing appears to have made that statement in the context of not feeling welcome anymore in the workplace.

Cowing, on the other hand, represents that he provided Lockheed Martin with twenty-seven pages of documents reciting his efforts to find employment after his employment at Lockheed Martin ended. Cowing also testified that if he had been hired during the time he was attending school online, he would have been able to work full time and still attend to his studies full time. (DE 24, Cowing Dep. at 37, internal page numbering at 145). Thus, Lockheed Martin's request for an order limiting the amount of damages Cowing can receive for the time he was in school will be denied.

Second, Lockheed Martin argues that Cowing has not identified evidence sufficient to support an award for damages for alleged emotional distress. Kentucky courts require "evidence of actual humiliation and embarrassment" to prove emotional distress damages. *Ky. Comm'n on Human Rights v. Fraser*, 625 S.W.2d 852,856 (Ky. 1981). Yet, Kentucky courts do not require that a plaintiff put on expert testimony in support of a claim for emotional distress damages. *See Smith v. Walle Corp.*, Civil Action No. 5:13-219-DCR, 2014 WL 5780959, at *4 (E.D. Ky. Nov. 5, 2014) (collecting cases).

Here, Cowing argues that he has presented evidence to support an award for these damages because he has testified to experiencing depression, anxiety, and sleepless nights as a result of Lockheed Martin's actions. Cowing's wife also testified that their household had

22

become more tense after August 2013, and she attributed this tension to Cowing not being able to return to work:

> And I think that . . . when he thinks he's . . . coming back to work and then he's not, you know, it plays with your emotions. Like yes, I'm going back to work; I'm going back to — to be able to provide for my family, and then it — then it doesn't happen, that plays with your emotions.

(DE 22-24, Marcie Cowing Dep. at 4, internal page numbering at 37–38).

Cowing was not required to present expert testimony on his claim for emotional distress damages, and the evidence he has presented does not warrant the limiting order requested by Lockheed Martin. Thus, Lockheed Martin's request for an order preventing Cowing from recovering emotional distress damages must also be denied.

### III. Conclusion

For the forgoing reasons, Lockheed Martin's motion for summary judgment is **DENIED** in part and **GRANTED** in part.

1. Lockheed Martin's claim of no liability as to Cowing's workplace exclusion claim is **DENIED.**

2. Lockheed Martin's claim of no liability as to Cowing's failure to accommodate his medical restrictions is **DENIED.**

3. Lockheed Martin's claim of no liability as to Cowing's failure to accommodate a transfer to the fab shop is **GRANTED.**

4. Lockheed Martin's request for an order limiting damages is **DENIED**.

Dated January 18, 2017.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY